# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

STEVEN L. LANE AND PAMELA I. LANE,
as Trustees of the Lane Family Trust Dated
April 10, 2001, on their own behalf and on behalf
of all others similarly situated,

        Plaintiffs,

vs.

BEELAND MANAGEMENT COMPANY, LLC,
WALTER T. PRICE III, ALLEN D. GOODMAN,
JAMES BEELAND ROGERS, JR. and ROGERS
INTERNATIONAL RAW MATERIALS FUND L.P.,

        Defendants.

**06C 0418**

**JUDGE KENNELLY**

Case No. _____

**MAGISTRATE JUDGE ASHMAN**

**F I L E D**

JAN 2 4 2006

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## CLASS ACTION AND DERIVATIVE ACTION COMPLAINT

Steven L. Lane and Pamela I. Lane, as Trustees of the Lane Family Trust Dated April 10,

2001 ("Plaintiffs"), by their undersigned attorneys, sue the Defendants, Beeland Management

Company, LLC, James Beeland Rogers, Jr., Walter T. Price III and Allen D. Goodman

("Defendants"). Plaintiffs bring derivative claims on behalf of and for the benefit of Rogers

International Raw Materials Fund L.P, which is named as a nominal defendant and which is not

referred to as one of the "Defendants" in this Complaint. Plaintiffs also bring claims as class

representatives on behalf of themselves and all others similarly situated. Plaintiffs' claims are based

on Plaintiffs' personal knowledge as to their own acts and other facts pertaining to themselves and,

after reasonable investigation by their undersigned attorneys, upon information and belief as to the

facts pertaining to all other matters.

## NATURE OF THE CASE

1.      In part, this is a derivative action. The derivative portion of this action is brought against the Defendants in the name of and for the benefit of the Rogers International Raw Materials Fund, L.P., (the "Fund") under Illinois law.

2.      This is also a class action brought against the Defendants pursuant to Illinois law and Rule 23, Federal Rules of Civil Procedure. The class action portion of this action is brought on behalf of Plaintiffs and all others similarly situated who at relevant times are or have been limited partners of Rogers International Raw Materials Fund, L.P.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over the subject matter of this action and over the parties to this action.

4.      This Court has original jurisdiction under 28 U.S.C. § 1332 because: the parties are of at least minimally diverse citizenship; the aggregated claims of Class Plaintiff and putative class members meets or exceeds $5,000,000, there are more than 100 putative class members; no states, state officials, or other governmental entities are defendants in this action.

5.      Venue is proper under 28 U.S.C. § 1391(a) because the Defendants reside in the state of Illinois, and a significant portion of the material events giving rise to this Action occurred in, this District.

## PARTIES

6.      The Plaintiffs, Steven L. Lane and Pamela I. Lane are Trustees of the Lane Family Trust Dated April 10, 2001. The Plaintiffs are limited partners of the Fund, having invested $25,000.00 in the Fund. Plaintiffs are residents of the state of California.

7.      The Defendant, Beeland Management Company, LLC ("Beeland Management"), is an Illinois limited liability company formed in 1997. Beeland Management is the general partner and commodity pool operator of the Fund.

8.      The Defendant, James Beeland Rogers, Jr. ("Rogers") is a member of Beeland Management. Rogers owns a 69.09% interest in Beeland Management.

9.      The Defendant, Walter T. Price III ("Price") is a managing member, serving as Principal Executive Officer, of Beeland Management.

10.     The Defendant, Allen D. Goodman ("Goodman") is a managing member, serving as Principal Financial Officer and Principle Accounting Officer, of Beeland Management.

11.     The Fund is an Illinois limited partnership. It was initially formed in May of 2000.

## FACTUAL ALLEGATIONS

12.     On or about August 8, 2004, Plaintiffs invested $25,000.00 in the Fund and became limited partners of the Fund.

13.     The prospectus issued on September 24, 2001 and sent to Plaintiffs at the time of their purchase of their limited partnership interest indicated:

> (a)     that the Fund's trading was designed to replicate the positions which comprised the Rogers International Commodity Index (the "Index"), a registered service mark of Beeland Interests, Inc. which is owned by Rogers;
>
> (b)     that the Index is a composite, U.S. Dollar-based total return index created by Rogers in July 1998. The Index was designed to meet the need for consistent investing in a broad-based international vehicle. It represents the

-3-

value of a basket of commodities consumed in the global economy, ranging from agricultural to energy to metal products;

(c)     that the value of said baskets is tracked via futures contracts on 35 different exchange-traded physical commodities, quoted in four currencies, listed on ten exchanges in five countries. Beeland Management uses and publishes the Index and markets products designed to track the Index pursuant to a non-exclusive, worldwide license from Beeland Interests, Inc.   The Index aims to be an effective measure of the price action of raw materials, not just in the Untied States, but also around the world.

(d)     that the Fund's principle objective is to provide investors such as the Plaintiffs the ability to make an investment which is designed to replicate the positions which comprise the Index.

14.     Prior to September 2005, the Fund had designated Man Financial, Inc. ("MFI") as its futures commission merchant and clearing broker. MFI was registered and regulated under the Commodities Exchange Act and was a member of the National Futures Association. It held assets of the Fund in regulated segregated customer accounts. Also prior to September, 2005, the Fund had assets in segregated customer accounts with Harris, N.A. ("Harris").

15.     In September 2005, Beeland Management made a decision to transfer the major portion of its total assets from its brokerage accounts at MFI and Harris to Refco, LLC and Refco Capital Markets, Ltd. ("Refco CM"), the ("Account Transfer Decision").

16.     The Account Transfer Decision represented a significant departure from the Fund's prior practice of maintaining commodity trading activities with brokers in segregated

-4-

accounts only. The Defendants caused the Fund to appoint Refco LLC as the Fund's clearing broker and they caused the Fund to open accounts with that entity. The Defendants also caused the Fund to open accounts with Refco CM, a Bermuda corporation, which Defendants knew was essentially unregulated and which Defendants knew would not hold Fund assets in regulated segregated customer accounts.

17. At the time of the Account Transfer Decision, the Defendants knew that assets held in any accounts with Refco CM offered dramatically less protection than segregated funds accounts in the event of a bankruptcy of Refco CM. The Defendants contemplated that 10% to 15% of the Fund's assets would be placed into the unregulated unsegregated accounts at Refco CM.

18. The Account Transfer Decision was fraught with conflicts of interest and self-dealing. Specifically, without limitation:

      (a)    Price Futures Group, Inc., wholly owned by Price, was the Fund's introducing broker. Accordingly it would receive brokerage commissions in connection with the Fund's transactions with Refco, LLC and Refco CM;

      (b)    In early 2005, Refco, Inc., the parent company of Refco LLC and Refco CM, or one or more other Refco entities affiliated with Refco LLC and Refco CM (collectively "Refco") approached Rogers about a buyout of Beeland Management, of which Rogers owned 60%;[1]

---

[1] Beeland Management was also the general partner of Rogers Raw Materials Fund, L.P., an indexed commodity fund similar to the Fund, which unlike the Fund, is privately owned.

(c)     Refco, Beeland Management and Rogers were also engaged in discussions concerning a purchase of both the Fund and the Rogers Raw Materials Fund (collectively the "Funds") by Refco;

(d)     In the spring of 2005, Beeland was looking for a chief operating officer for the Fund. At the recommendation of Rogers, Beeland Management interviewed Robert Mercorella, who was employed as the senior Vice President and Director of Global Marketing and Business Development of Refco Group Ltd.;

(e)     During his interviews, Mercorella touted his connections at Refco, which he claimed would be useful to the Fund. In June 2005, at the urging of Rogers, Beeland Management hired Mercorella as its chief operating officer;

(f)     The decision to hire Mercorella was influenced by the desire of the Defendants to further their prospects of personally obtaining vast financial gains from proposed transactions with Refco;

(g)     While Mercorella was employed by Beeland Management, one of his first priorities was to arrange to use Refco's regulated stock trading arm, Refco Securities, LLC, as the selling agent responsible for marketing the Rogers Fund's shares to investors;

(h)     The Account Transfer Decision, as well as the decision to transfer the accounts of Rogers Raw Materials Fund, totalling hundreds of millions of dollars, was made in whole or in part not because of demonstrable benefits

-6-

to the Fund, but because Mercorella urged that doing so would further the proposed transactions between Beeland Management and Refco from which the Defendants stood to obtain vast personal gains, while subjecting the assets of the Funds to the substantial risk of being held in non-regulated, unsegregated accounts.

19.     In making the Account Transfer Decision, the Defendants ignored public information which, properly considered, revealed that the Account Transfer Decision exposed the Fund to unacceptable risks. Specifically, but without limitation:

(a)     Refco, Inc.'s chief financial officer, Robert C. Trosten, resigned on October 12, 2004, approximately four months prior to the filing of Refco's first initial public offering registration statement. The departure of Refco's chief financial officer just prior to the initial public offering should have been a red flag to the Defendants as executives of a privately held company typically receive large equity interests in the company when it goes public. The departure of the company's CFO prior to the initial public offering suggests that he was concerned about the increased scrutiny to which the company's accounting would be subjected as part of the public offering process.

(b)     Refco disclosed in its final prospectus filed with the SEC on August 11, 2005, that its accountants had determined that its internal controls over financial reporting suffered from a "significant deficiency." Specifically, Refco disclosed:

Our auditors reported to us that, at February 28, 2005, there were two significant deficiencies in our internal controls over financial reporting.

In connection with their audit of our most recently audited financial statements, **our independent auditors reported to us that we had two significant deficiencies in our internal controls over financial reporting**. Under standards established by the Public Company Accounting Oversight Board, a "significant deficiency" is defined as a deficiency that results in more than a remote likelihood that a misstatement of the financial statements that is more than inconsequential will not be prevented or detected. One significant deficiency was determined to exist based on the need to increase our existing finance department resources to be able to prepare financial statements that are fully compliant with all SEC reporting guidelines on a timely basis. The second significant deficiency was determined to exist based on our lack of formalized procedures for closing our books. Currently we utilize the services of an outside service provider to assist in our financial reporting process. As we prepare for the completion of the offering, we are in the process of enhancing our financial reporting capability by hiring additional internal audit and finance personnel and developing formalized closing procedures, including through the implementation of software upgrades throughout our operations. Although these measures are designed to address the issues raised by our independent auditors, **these and any future measures may not enable us to remedy these significant deficiencies or avoid other significant deficiencies in the future**. In addition, these and any other significant deficiencies will need to be addressed as part of the evaluation of our internal controls over financial reporting pursuant to Section 404 of the Sarbanes–Oxley Act of 2002 and may impair our ability to comply with Section 404. [Emphasis added.]

(c)     Furthermore, Refco disclosed in its August 2005 prospectus that the SEC

intends to pursue a civil enforcement action against its subsidiary for

violations of the Securities Exchange Act of 1934. Specifically, it was

disclosed that:

On May 16, 2005, we announced that our subsidiary, Refco Securities, LLC ("Refco Securities"), had received a "Wells Notice" from the SEC arising out of an investigation into short sales of the stock of Sedona Corporation. **The Wells Notice stated that the SEC staff intends to recommend that a civil enforcement action be brought against Refco Securities, alleging violations of Section 17(a) of the Securities Act** of 1933, as amended, Sections 10(b) and 17(a) of the Exchange Act of 1934, as amended, and Rules 10b-5, 17a-3 and 17a-4 thereunder, Section 220.8 of Regulation T, Conduct Rule 3370 of the National Association of Securities Dealers, Inc., aiding and abetting violations of Section 15(a) of the Exchange Act of 1934, as amended **and failure to comply with a prior SEC cease and desist order and the Section 21(a) order from the SEC.** [Emphasis added.]

(d)     Refco had just $150 million supporting some $50 billion of assets, meaning that the later disclosed hidden debt of his chief executive officer, as referenced in paragraph 26, left Refco with a negative net worth.

(e)     Typically, Refco did not charge off delinquent customer receivables as required when a debt became uncollectible.

20.     The Defendants either ignored the foregoing information, or negligently failed to perform due diligence in connection with the Account Transfer Decision so as to discover this information.

21.     Blinded by their pursuit of their self-interests, the Defendants caused the Fund to transfer assets of the Fund totaling approximately $65,000,000.00 from segregated accounts at FMI and Harris to Refco LLC and Refco CM in late September 2005.

22.     Once the Account Transfer Decision was made, the Defendants had a duty to ensure that the Fund's assets were safe, including taking appropriate steps to assure that the assets were deposited into regulated and segregated accounts.

23. However, Goodman, who acted on behalf of the Fund in closing on the transfer of the assets, has admitted that he did not understand the agreements he signed in opening the accounts and transferring the Fund's assets, and he has admitted that he did not understand which particular Refco entity was the transferee of the Fund's assets.

24. Most of the Fund's assets ended up at Refco CM which is an unregulated offshore entity and which did not maintain segregated accounts for its clients.

25. On October 17, 2005, several Refco entities, including Refco CM, which by then held most of the Fund's assets in unsegregated accounts, filed a Chapter 11 bankruptcy case in the United States Bankruptcy Court for the Southern District of New York.

26. The bankruptcy filing of Refco was prompted by, among other things, the disclosure that Refco's chief executive officer, Philip Bennett, secretly had owed Refco as much as $545,000,000.00 since the late 1990s. This revelation wiped out 72% of Refco's stock market capitalization, pushed its bonds to junk status and forced the firm to cease much of its operations due to a cash crunch.

27. Although the Fund has commenced litigation in Refco's bankruptcy case to establish that it holds title to the assets transferred to Refco CM, Refco CM has defended said claim and alleged that the Fund assets transferred to Refco CM are owned by it and are available for administration in the bankruptcy case and for distribution to the creditors of Refco CM.

28. In November 2005, the Fund advised Plaintiffs and all other limited partners that because Fund assets were tied up in the Refco bankruptcy case, the Fund was unable to provide an accurate value for its units for reporting purposes. Therefore, the Fund was unable and unwilling to process redemptions for October 31, 2005. Furthermore, limited partners presently

-10-

are only able to exercise redemption rights with regard to assets of the Fund which are not tied up in the Refco bankruptcy cases. Accordingly, the limited partnership interest of the Plaintiffs and all other parties similarly situated, have been rendered wholly or partially illiquid and unredeemable pursuant to the operating agreement of the Fund, thereby causing a direct economic injury to them which is separate and distinct from the injury suffered by the Fund.

29.     As a result of Defendants' conduct Plaintiffs have been required to retain the undersigned counsel to protect their interests, and Plaintiffs have agreed to pay counsel a reasonable fee.

<strong>COUNT I</strong>

<strong>DERIVATIVE CLAIM AGAINST DEFENDANTS</strong>

<strong>BREACH OF FIDUCIARY DUTY</strong>

30.     Plaintiffs incorporate and reallege each and every allegation of paragraphs 1 through 29 above.

31.     At common law and pursuant to the prospectus, the Defendants at all times had fiduciary duties to the Fund and to its limited partners. Specifically, without limitation, the Fund's Form S-1 filed with the Securities Exchange Commission on September 20, 2005, stated that:

> The Index Fund's general partner is accountable to the Index Fund as a fiduciary. Under Illinois law, the fiduciary duty owed by a general partner to a limited partner encompasses the duty of exercising good faith, honesty, and fairness in his dealings with them and the funds of the partnership. The fiduciary relationship embraces all matters reasonably relating to the partnership. The general partner's fiduciary duty exists concurrently with the obligation set forth in the partnership agreement.

32.     The Fund has suffered damages due to the Defendants' actions as alleged above. Such actions, motivated by self-dealing and self-interest and a disregard for the interests of the

Fund constituted misconduct and breaches of the Defendants' fiduciary duties to the Fund and to the limited partners.

33. The Defendants above-described conduct were not actions performed in the exercise of valid business judgment, but were acts performed in a grossly negligent manner, in violation of their duty of loyalty, good faith, due care, diligence and candor.

34. Because of the Defendants' actions alleged above, the Fund has suffered and will continue to suffer serious economic injury in that the major portion of the Fund's assets are tied up in the Refco bankruptcy case and the Fund has incurred and will continue to incur substantial legal expense in trying to recoup its loss.

35. The Plaintiffs have no adequate remedy at law except to seek to recover the Fund's losses in this derivative action.

36. The Plaintiffs will fairly and adequately represent the interests of the Fund in this derivative action.

37. The Plaintiffs have made no demand on the general partner or any other defendant to bring the derivative claims because such a demand would be a futile and useless act.

38. Demand is excused under the above-alleged facts because:

    (a) the Defendants were not disinterested and independent when making and implementing the Asset Transfer Decision, but in fact they were acting in their individual self-interests which were contrary to the interests of the Fund and its limited partners;

-12-

(b)     the Defendants' actions were so tainted and motivated by self-interest,

breach of fiduciary duty and gross negligence, that the Defendants' conduct

cannot reasonably be justified as the exercise of proper business judgment.

(c)     there is a high likelihood that the Defendants will be held liable for their

above-alleged conduct and for all of the foregoing reasons they cannot

reasonably be trusted or expected vigorously to pursue these claims.

**WHEREFORE**, Plaintiffs demand a judgment for damages against the Defendants for

damages on behalf of and for the use and benefit of the Fund, including prejudgment interest,

costs, and attorneys fees and granting such other and further relief as may be just and proper.

## COUNT II

## DERIVATIVE CLAIM AGAINST DEFENDANTS

## NEGLIGENCE

39.     Plaintiffs incorporate and reallege each and every allegation of paragraphs 1

through 29 above.

40.     At common law and pursuant to the prospectus, the Defendants are liable to the

Fund and to the limited partners for any acts of misconduct or negligence as, without limitation,

set forth in the same form S-1 Registration Statement in which it was stated:

As mentioned above, some provisions of the Index Fund's limited partnership
agreement may take away or limit some of the legal remedies that might be
available to limited partners. For example, the limited partnership agreement
provides that the Index Fund's general partner will not be liable for damages to the
Index Fund or any of the limited partners **except for acts or omissions which
constitute misconduct or negligence**. (Emphasis supplied).

-13-

41.     The actions of the Defendants in ignoring or failing to discover the adverse information about Refco referenced above, and their failure to take adequate precautions to assure that the transferred assets went into regulated segregated accounts, were negligent and breached the standard of care owed to the Fund and its limited partners.

42.     The Defendants above-described conduct were not actions performed in the exercise of valid business judgment, but were acts performed in a grossly negligent manner, in violation of their duty of loyalty, good faith, due care, diligence and candor.

43.     Because of the Defendants' actions alleged above, the Fund has suffered and will continue to suffer serious economic injury in that the major portion of the Fund's assets are tied up in the Refco bankruptcy case and the Fund has incurred and will continue to incur substantial legal expense in trying to recoup its loss.

44.     The Plaintiffs have no adequate remedy at law except to seek to recover the Fund's losses in this derivative action.

45.     The Plaintiffs will fairly and adequately represent the interests of the Fund in this derivative action.

46.     The Plaintiffs have made no demand on the general partner or any other defendant to bring the derivative claims because such a demand would be a futile and useless act.

47.     Demand is excused under the above-alleged facts because:

(a)     the Defendants were not disinterested and independent when making and implementing the Asset Transfer Decision, but in fact they were acting in their individual self-interests which were contrary to the interests of the Fund and its limited partners;

-14-

(b)     the Defendants' actions were so tainted and motivated by self-interest, breach of fiduciary duty and gross negligence, that the Defendants' conduct cannot reasonably be justified as the exercise of proper business judgment.

(c)     there is a high likelihood that the Defendants will be held liable for their above-alleged conduct and for all of the foregoing reasons they cannot reasonably be trusted or expected vigorously to pursue these claims.

**WHEREFORE**, Plaintiffs demand a judgment for damages against the Defendants for damages on behalf of and for the use and benefit of the Fund, including prejudgment interest, costs, and attorneys' fees and granting such other and further relief as may be just and proper.

## COUNT III

### CLASS CLAIM AGAINST DEFENDANTS

### BREACH OF FIDUCIARY DUTY

48.     Plaintiffs incorporate and reallege each and every allegation of paragraphs 1 through 29 above.

49.     At common law and pursuant to the prospectus, the Defendants at all times had fiduciary duties to the Fund and to its limited partners. Specifically, without limitation, the Fund's Form S-1 filed with the Securities Exchange Commission on September 20, 2005, stated that:

> The Index Fund's general partner is accountable to the Index Fund as a fiduciary. Under Illinois law, the fiduciary duty owed by a general partner to a limited partner encompasses the duty of exercising good faith, honesty, and fairness in his dealings with them and the funds of the partnership. The fiduciary relationship embraces all matters reasonably relating to the partnership. The general partner's fiduciary duty exists concurrently with the obligation set forth in the partnership agreement.

50.     The Fund has suffered damages due to the Defendants' actions as alleged above. Such actions, motivated by self-dealing and self-interest and a disregard for the interests of the Fund constituted misconduct and breaches of the Defendants' fiduciary duties to the Fund and to the limited partners.

51.     The Defendants above-described conduct were not actions performed in the exercise of valid business judgment, but were acts performed in a grossly negligent manner, in violation of their duty of loyalty, good faith, due care, diligence and candor.

52.     Because of the Defendants' actions alleged above, the Fund has suffered and will continue to suffer serious economic injury in that the major portion of the Fund's assets are tied up in the Refco bankruptcy case and the Fund has incurred and will continue to incur substantial legal expense in trying to recoup its loss.

53.     The requirements for maintaining this action as a class action are satisfied in that:

    (a)     The class is so numerous that joinder of all members of the class is impracticable. As of December 31, 2003, there were approximately 375 members of the Fund, according to the Fund's 10-K report which was filed March 30, 2004. Such number of putative class members makes the joinder of all of them highly impracticable.

    (b)     There are questions of law or fact common to the class, namely, the Defendants' conduct as alleged in this Complaint equally and identically affected all limited partners in rendering their limited partnership interest illiquid and non-redeemable in full. All limited partners who seek to have their limited partnership interests redeemed will not receive the value of

-16-

assets tied up in the Refco bankruptcy case and all such limited partners equally suffer the loss of use of redemption proceeds unless and until the Fund's assets are recovered from Refco. Any such recovery will not compensate limited partners for the loss and use of such redemption proceeds.

(c)     The claims or defenses of the representative parties are typical of the claims and defenses of the class because the class plaintiffs and the putative class members have been affected in precisely the same way by the Defendants' conduct in that all limited partners of the Fund are being deprived of the ability to have their limited partnership interest redeemed in full and they have all been equally deprived of the loss of use of redemption proceeds.

(d)     The representative parties will fairly and adequately protect the interest of the class in that:

    (i)     class plaintiffs are mature, stable, responsible individuals who are interested in the fair and equitable adjudication of all class claims;

    (ii)     class plaintiffs have demonstrated to class counsel that they are willing and able to fully and faithfully participate in this litigation, from its inception to its conclusion;

    (iii)     class plaintiffs have personal knowledge about the facts and circumstances surrounding this controversy, and will provide the necessary testimony and other evidence to support the class claim;

-17-

        (iv)     class counsel has participated in numerous class actions and possesses the requisite financial resources to maintain this litigation on behalf of the class plaintiffs and the putative class members.

   (e)     The prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class, which would establish incompatible standards of conduct for the party opposing the class. Specifically:

        (i)     the prosecution of hundreds of separate actions would create a substantial risk that individual adjudications would establish widely divergent results, including varying legal and equitable remedies fashioned to address the class plaintiff's and putative member's claims;

        (ii)     each action would be decided, at least in part, on a subjective basis, creating the possibility that subjectivity would lead to inconsistent standards of responsibility on the part of the defendants;

        (ii)     accordingly, the Defendants would be subject to incompatible standards of conduct that interpose the substantial risk that individual class members would be afforded inequitable relief.

   (f)     The prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would, as a practical

-18-

matter, be dispositive of the interests of the other members not parties to the adjudications, or they would substantially impair or impede their ability to protect their interest. Specifically:

(i)     in the event that the hundreds of individual class members were required to prosecute their claims separately, it is entirely likely that a limited number of putative class members would go forward with litigation to obtain relief in a timely manner;

(ii)    as a result, certain of the putative class members would be subject to the principals of *res judicata* or claim or issue preclusion, and the Defendants' liability to class members seeking to litigate their claims at a later date would be subject to earlier decisions of state and possibly federal courts;

(iii)   these earlier decisions may well establish the guilt or innocence of one or more of the Defendants for acts alleged in this Complaint. Thus, putative class members who later file claims may be subject to preclusion of issues of law and fact that were decided without such class members' knowledge or participation and they may be impeded in their quest for justice.

(g)     Additionally, the interest of the putative class members that do not enjoy the benefit of participation in earlier litigation may find it difficult to obtain appropriate relief thereby resulting in substantial impairment of their ability to protect their legitimate interests.

-19-

(h)     The Defendants have acted or refused to act on grounds generally
applicable to the class, thereby making it appropriate to grant final relief
with respect to the class as a whole. Specifically:

    (i)     the defendants' actions have affected all putative class members in
the same fashion;

    (ii)    class plaintiffs and putative class members have been uniformly
damaged by the Defendants' wrongful conduct;

    (iii)   accordingly, a final adjudication as to the Defendants' wrongful
actions is appropriate because the Defendants' wrongful actions are
applicable to the class as a whole.

(i)     The questions of law and fact common to the members of the class
predominate over any questions affecting only individual members, and a
class action is superior to other available methods for the fair and efficient
adjudication of the controversy. Specifically:

    (i)     each of the putative class members have been affected in the
identical way by the Defendants' wrongful actions as alleged in this
Complaint;

    (ii)    the questions of law and fact specified above predominate over any
questions affecting only individual members because the questions
of law and fact unique to individual members relate identically to
their same inability to obtain a full redemption of their limited

-20-

partnership interest because of the Defendants' alleged wrongful conduct;

(iii)    to the extent that individual questions do arise with respect to putative class members, they usually can be segregated into sub-classes and managed to reduce and avoid any unnecessary complexity and expense.  Moreover, the common questions of law or fact regarding the Defendants far outnumber any individual and relatively minor individual issues;

(iv)    the limited partners are similarly situated in terms of financial wherewithal, net worth and sophistication, as described at pages 49-50 of the prospectus.

**WHEREFORE**, Plaintiffs, on behalf of themselves and all others similarly situated, request the following relief:

1.    Certification of this class as a class action pursuant to Rule 23, Federal Rules of Civil Procedure;

2.    Find for the plaintiffs and against the defendants on the actions asserted herein;

3.    Award compensatory damages, pre-judgment interest, costs and attorneys' fees;

4.    Such other and further relief as may be just and proper.

## COUNT IV

## CLASS CLAIM AGAINST DEFENDANTS

## NEGLIGENCE

-21-

54.     Plaintiffs incorporate and reallege each and every allegation of paragraphs 1 through 29 above.

55.     At common law and pursuant to the prospectus, the Defendants are liable to the Fund and to the limited partners for any acts of misconduct or negligence as, without limitation, set forth in the same form S-1 Registration Statement in which it was stated:

> As mentioned above, some provisions of the Index Fund's limited partnership agreement may take away or limit some of the legal remedies that might be available to limited partners. For example, the limited partnership agreement provides that the Index Fund's general partner will not be liable for damages to the Index Fund or any of the limited partners **except for acts or omissions which constitute misconduct or negligence**. (Emphasis supplied).

56.     The actions of the Defendants in ignoring or failing to discover the adverse information about Refco referenced above, and their failure to take adequate precautions to assure that the transferred assets went into regulated segregated accounts, were negligent and breached the standard of care owed to the Fund and its limited partners.

57.     The Defendants above-described conduct were not actions performed in the exercise of valid business judgment, but were acts performed in a grossly negligent manner, in violation of their duty of loyalty, good faith, due care, diligence and candor.

58.     Because of the Defendants' actions alleged above, the Fund has suffered and will continue to suffer serious economic injury in that the major portion of the Fund's assets are tied up in the Refco bankruptcy case and the Fund has incurred and will continue to incur substantial legal expense in trying to recoup its loss.

59.     The requirements for maintaining this action as a class action are satisfied in that:

(a)    The class is so numerous that joinder of all members of the class is impracticable. As of December 31, 2003, there were approximately 375 members of the Fund, according to the Fund's 10-K report which was filed March 30, 2004. Such number of putative class members makes the joinder of all of them highly impracticable.

(b)    There are questions of law or fact common to the class, namely, the Defendants' conduct as alleged in this Complaint equally and identically affected all limited partners in rendering their limited partnership interest illiquid and non-redeemable in full. All limited partners who seek to have their limited partnership interests redeemed will not receive the value of assets tied up in the Refco bankruptcy case and all such limited partners equally suffer the loss of use of redemption proceeds unless and until the Fund's assets are recovered from Refco. Any such recovery will not compensate limited partners for the loss and use of such redemption proceeds.

(c)    The claims or defenses of the representative parties are typical of the claims and defenses of the class because the class plaintiffs and the putative class members have been affected in precisely the same way by the Defendants' conduct in that all limited partners of the Fund are being deprived of the ability to have their limited partnership interest redeemed in full and they have all been equally deprived of the loss of use of redemption proceeds.

(d)     The representative parties will fairly and adequately protect the interest of
the class in that:

(i)     class plaintiffs are mature, stable, responsible individuals who are
interested in the fair and equitable adjudication of all class claims;

(ii)    class plaintiffs have demonstrated to class counsel that they are
willing and able to fully and faithfully participate in this litigation,
from its inception to its conclusion;

(iii)   class plaintiffs have personal knowledge about the facts and
circumstances surrounding this controversy, and will provide the
necessary testimony and other evidence to support the class claim;

(iv)    class counsel has participated in numerous class actions and
possesses the requisite financial resources to maintain this litigation
on behalf of the class plaintiffs and the putative class members.

(e)     The prosecution of separate actions by or against individual members of the
class would create a risk of inconsistent or varying adjudications with
respect to individual members of the class, which would establish
incompatible standards of conduct for the party opposing the class.
Specifically:

(i)     the prosecution of hundreds of separate actions would create a
substantial risk that individual adjudications would establish widely
divergent results, including varying legal and equitable remedies

-24-

fashioned to address the class plaintiff's and putative member's claims;

(ii)    each action would be decided, at least in part, on a subjective basis, creating the possibility that subjectivity would lead to inconsistent standards of responsibility on the part of the defendants;

(ii)    accordingly, the Defendants would be subject to incompatible standards of conduct that interpose the substantial risk that individual class members would be afforded inequitable relief.

(f)    The prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications, or they would substantially impair or impede their ability to protect their interest. Specifically:

(i)    in the event that the hundreds of individual class members were required to prosecute their claims separately, it is entirely likely that a limited number of putative class members would go forward with litigation to obtain relief in a timely manner;

(ii)    as a result, certain of the putative class members would be subject to the principals of *res judicata* or claim or issue preclusion, and the Defendants' liability to class members seeking to litigate their

claims at a later date would be subject to earlier decisions of state and possibly federal courts;

(iii)    these earlier decisions may well establish the guilt or innocence of one or more of the Defendants for acts alleged in this Complaint. Thus, putative class members who later file claims may be subject to preclusion of issues of law and fact that were decided without such class members' knowledge or participation and they may be impeded in their quest for justice.

(g)    Additionally, the interest of the putative class members that do not enjoy the benefit of participation in earlier litigation may find it difficult to obtain appropriate relief thereby resulting in substantial impairment of their ability to protect their legitimate interests.

(h)    The Defendants have acted or refused to act on grounds generally applicable to the class, thereby making it appropriate to grant final relief with respect to the class as a whole. Specifically:

(i)    the defendants' actions have affected all putative class members in the same fashion;

(ii)    class plaintiffs and putative class members have been uniformly damaged by the Defendants' wrongful conduct;

(iii)    accordingly, a final adjudication as to the Defendants' wrongful actions is appropriate because the Defendants' wrongful actions are applicable to the class as a whole.

(i)     The questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Specifically:

        (i)     each of the putative class members have been affected in the identical way by the Defendants' wrongful actions as alleged in this Complaint;

        (ii)     the questions of law and fact specified above predominate over any questions affecting only individual members because the questions of law and fact unique to individual members relate identically to their same inability to obtain a full redemption of their limited partnership interest because of the Defendants' alleged wrongful conduct;

        (iii)     to the extent that individual questions do arise with respect to putative class members, they usually can be segregated into sub-classes and managed to reduce and avoid any unnecessary complexity and expense. Moreover, the common questions of law or fact regarding the Defendants far outnumber any individual and relatively minor individual issues;

        (iv)     the limited partners are similarly situated in terms of financial wherewithal, net worth and sophistication, as described at pages 49-50 of the prospectus.

**WHEREFORE**, Plaintiffs, on behalf of themselves and all others similarly situated, request the following relief:

1.    Certification of this class as a class action pursuant to Rule 23, Federal Rules of Civil Procedure;

2.    Find for the plaintiffs and against the defendants on the actions asserted herein;

3.    Award compensatory damages, pre-judgment interest, costs and attorneys' fees;

4.    Such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

Floyd A. Wisner
Wisner Law Firm
934 S. 4th Street
St. Charles, IL 60174
630.513.9434
630.513.6287 fax

AND

Andy Dogali
Zala L. Forizs
Forizs & Dogali, P.L.
4301 Anchor Plaza Parkway, #300
Tampa, FL 33634
813.289.0700
813.289.9435 fax

AND

Scott E. Schutzman
Law Offices of Scott E. Schutzman
3700 S. Susan Street

-28-

Santa Ana, CA 92704
714.543.3638
714.245.2449 fax

## VERIFICATION

I, Steve Lane, declare as follows:

I am the plaintiff in the above-entitled action. I have read the above complaint and know its contents. The matters stated in the complaint are true of my own knowledge, except for those items, which are alleged on my information and belief, and as to those matters, I believe them to be true. I am currently and was a limited partner at the time of the transaction of which I complain, and this action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

I declare under penalty of perjury under the laws of the State of Illinois that the above is true and correct. Executed on January 23, 2006, at Garden Grove, California.

Steve Lane